■ In the Matter of NEW YORK PUBLIC INTEREST RESEARCH GROUP, INC., et al., Appellants, v BROOME COUNTY RESOURCE RECOVERY AGENCY, Respondent.—Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Smyk, J.), entered September 16, 1991 in Broome County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, seeking, *inter alia,* a declaration that a letter of intent and agreement between respondent and Chambers Waste Systems of Virginia, Inc. was void.

In March 1991 respondent entered into a "letter of intent and agreement" with Chambers Waste Systems of Virginia, Inc., by the terms of which Chambers agreed to reserve sufficient capacity at one of its landfills for the disposal of ash residue and bypass waste to be generated by an incinerator to be constructed by respondent in Broome County. In exchange for this promise, respondent agreed to pay a "landfill standby fee" of $2,000 per month and an "additional standby fee" of $50,000 within one week of receiving financing for the proposed facility. The letter, signed by a representative of Chambers and by respondent's chair, further provided that a "final agreement" was to be negotiated in good faith by both parties. In entering into the agreement evidenced by the letter, respondent did not comply with any competitive bidding procedures.

Petitioners subsequently commenced this combined CPLR

article 78 proceeding and declaratory judgment action seeking, *inter alia*, a declaration that the letter of intent and agreement is void because of respondent's failure to comply with the competitive procurement requirements of General Municipal Law § 120-w. Prior to the expiration of the letter of intent and agreement, $12,000 was assertedly paid thereunder and petitioners, as taxpayers, want respondent to take all necessary action to recover this money. Supreme Court, finding that the letter of intent and agreement was not a contract and, further, that Public Authorities Law § 2047-e (5), (9) and (12) and § 2047-x precluded the application of General Municipal Law § 120-w to letters of intent, dismissed the petition. Petitioners appeal.

Public Authorities Law § 2047-e empowers respondent to enter into contracts in furtherance of its objectives *(see,* Public Authorities Law § 2047-e [6], [9], [12]). And Public Authorities Law § 2047-p mandates that any "contracts * * * for work, material or supplies performed or furnished in connection with construction" of solid waste management resource recovery facilities are to be awarded pursuant to the requirements of General Municipal Law § 120-w (4) (e), which provides that, wherever practical, such contracts are to be procured through competitive bidding procedures. As a consequence, a contract, although authorized by Public Authorities Law § 2047-e, nevertheless may not be entered into unless it conforms to the procedural limitations imposed by Public Authorities Law § 2047-p; to conclude otherwise would be to vitiate the statute's competitive bidding requirements.

Thus, whether petitioners are entitled to relief turns on whether the "letter of intent and agreement" constitutes a contract, and if so, whether it comes within the purview of Public Authorities Law § 2047-p. To be sure, an agreement to make a contract in the future may be too indefinite to constitute a contract *(see, Aces Mech. Corp. v Cohen Bros. Realty & Constr. Corp.,* 136 AD2d 503, 504-505; *Blakey v McMurray,* 110 AD2d 998, 999); the letter of intent and agreement at hand, however, is more than simply an "agreement to agree" to the terms of a final agreement. Notably, the letter contains definite provisions intended to assure reservation to the agency of space at a Chambers landfill site pending possible future negotiations. This reservation of space was not in any way contingent on the execution of the final agreement. Moreover, the letter provided for a $50,000 payment to Chambers, should the project be financed, even if the final agreement was never executed. In addition, the amount of capacity to be reserved

by Chambers for the agency's use was specified: enough to accommodate 52,000 tons of ash residue and 10,000 tons of bypass waste per year for five years. Chambers was also given a right of first refusal to negotiate a final agreement, which would govern the particulars of actual disposal at Chambers' landfill. Doubtless, these terms were intended to be binding on both parties; in fact, the possibility of a "breach" of the agreement was specifically adverted to in the agreement itself. Thus, a contract was formed between Chambers and respondent (see, *May Metro. Corp. v May Oil Burner Corp.*, 290 NY 260, 264; *Four Seasons Hotels v Vinnik*, 127 AD2d 310, 317, 321).

To determine whether this contract comes within the reach of Public Authorities Law § 2047-p, it is necessary to examine the subject matter of the contract and the circumstances under which it was executed. The term "construction," as used in section 2047-p, is defined very broadly to include not only the actual erection of a facility, but also "actions incidental thereto" (Public Authorities Law § 2047-b [6]). Because the contract was executed as a prerequisite to obtaining a permit to construct a solid waste facility, it was manifestly incidental to such construction. Furthermore, landfill capacity is a "supply" that is being furnished in connection with the construction—particularly the permitting phase of construction—of the facility.

Accordingly, the letter of intent and agreement between respondent and Chambers is void for failure to comply with the requirements of General Municipal Law § 120-w (4) (e), as required by Public Authorities Law § 2047-p.

Weiss, P. J., Mikoll, Mercure and Crew III, JJ., concur. Ordered that the judgment is reversed, on the law, with costs, and it is declared that the March 11, 1991 letter of intent and agreement between respondent and Chambers Waste Systems of Virginia, Inc. is null and void.